Linda Riley, Esq. Informal Opinion Village Attorney No. 2002-8 Village of East Hampton 86 Main Street East Hampton, N.Y. 11937-2730
Dear Ms. Riley:
You have inquired whether a member of the Village of East Hampton's Design Review Board (the "Board") who is a professional architect must resign his position on the Board if the architectural firm in which he is a partner infrequently accepts projects over which the Board has jurisdiction. We conclude that resignation probably is not required, but on the rare occasions when the Board member's firm's projects require review by the Board, he unquestionably should recuse himself from any consideration of the project or matter in question.
A. Background
You have advised us of the following facts. Pursuant to Local Law, the Village of East Hampton ("East Hampton") has created a seven-member Design Review Board that reviews site plans and applications for alterations to commercial buildings and other non-residential structures. In addition, the Board reviews applications for alterations to all properties located within several of East Hampton's Historic Districts. In order to serve on the Design Review Board, an individual must be a resident of East Hampton.
The Mayor of East Hampton and the Village Board of East Hampton believe that it benefits the Board and applicants alike for the Board to include a professional architect as a member. Moreover, you note that the guidelines of the New York State Office of Parks, Recreation and Historic Preservation suggest that "to the extent that such professionals are available," the community should appoint "commission members to represent the disciplines of history, architectural history, architecture, archeology, and other historic-related professions."
The Board presently includes an architect who is a partner in an architectural firm. On infrequent occasions — "approximately once a year" — one of his firm's projects requires Board review. You also note that in those rare instances, "[i]t is understood" that the Board member in question "should recuse himself from participating in the discussion on any such matters and from the vote." You ask, however, whether instead of recusing himself in such instances, he should resign if his firm decides that it cannot refrain from accepting work in the future that might be reviewed by the Board. You add that "[i]t is unlikely that there are other historic preservation-professionals willing to serve on the Board who are also residents of [East Hampton] who would be willing, as a condition of their service, to refrain from accepting any employment related to projects over which the Board may have jurisdiction."
In addition, by telephone you informed us that you have consulted East Hampton's code of ethics and found that it did not provide a conclusive answer to your inquiry. You noted further that East Hampton has no a board of ethics, and that the Suffolk County Board of Ethics renders advisory opinions only to county employees, not municipalities.
B. Analysis
"Resolution of questions of conflict of interest requires a case-by-case examination of the relevant facts and circumstances." Matter of Parkerv. Town of Gardiner Planning Bd., 184 A.D.2d 937 (3d Dep't), app.denied, 80 N.Y.2d 761 (1992). Public officials, such as members of East Hampton's Design Review Board, must perform their official duties solely in the public interest, and must avoid circumstances which compromise their ability to make impartial judgments on any basis other than the public good. Op. Atty. Gen. (Inf.) No. 99-21; see also, Matter of TuxedoConservation Taxpayers Assoc. v. Town Bd. of Town of Tuxedo,69 A.D.2d 320, 325 (2nd Dep't 1979) ("It is the policy of the law to keep the official so far from temptation as to ensure his unselfish devotion to the public interest.") (internal quotations omitted).
Indeed, in order to maintain public confidence in the integrity of government, public officials must avoid even the appearance of impropriety. Op. Atty. Gen. (Inf.) No. 2000-22; see also Matter ofTuxedo, 69 A.D.2d at 325 ("the test to be applied is not whether there is a conflict, but whether there might be"). "It is critical that the public be assured that their [sic] officials are free to exercise their best judgment without any hint of self-interest or partiality, especially if a matter under consideration is particularly controversial." Matterof Byer v. Town of Poestenkill, 232 A.D.2d 851, 852-53 (3d Dep't 1996). Thus, where a public official is uncertain about whether he should undertake a particular action due to an actual or potential conflict, he must recuse himself entirely from the matter in question unless he procures an advisory opinion from a local ethics board that concludes otherwise. See Op. Atty. Gen. (Inf.) No. 98-38; see also Op. Atty. Gen. (Inf.) No. 99-21 (recusal requires the official in question to avoid "taking any actions with respect to that matter").
Clearly, for the Board member in question here to participate in the consideration of any matter or project submitted by his architectural firm to the Board for review would, at a minimum, raise the appearance of impropriety and call into question the validity of the action ultimately taken by the Board with respect to that matter. See Op. Atty. Gen. (Inf.) No. 99-42; Matter of Zagoreos v. Conklin, 109 A.D.2d 281, 286 (2nd Dep't 1985) (setting aside determinations by town board because of "perceived conflict of interest"). Therefore, on those infrequent occasions when the Board member's architectural firm submits a project for Board review, he should in our estimation recuse himself entirely from any consideration of the matter. See Op. Atty. Gen. (Inf.) Nos. 2000-9, 2000-49.
We do not believe, however, that based on the facts presented the Board member in question must resign his position on the Board, even if there is a substantial possibility that his firm on rare occasions will continue to submit further projects to the Board for review. Because the resolution of ethical questions is highly fact-sensitive, see Matter ofParker, 184 A.D.2d 937, and because the legal standards are highly subjective, see, id. (Attorney General and Town Board differed over whether recusal was necessary), it is extremely difficult to predict what degree of contact between the Board member's architectural firm and the Board would trigger the "appearance of impropriety" requiring resignation. We believe, however, that the infrequent contact you describe here warrants no more than recusal. Cf. Op. Atty. Gen. (Inf.) No. 99-39 (opining that recusal of a board member was "not an adequate remedy" where the impartiality of the public board "would not be free from doubt" by virtue of the fact that the individual occupied another public position that was by its very nature inherently inconsistent with his duties as a board member).
Our view that recusal is an appropriate and adequate remedy under the circumstances of this case accords with the views expressed in our prior opinions involving situations similar, but by no means identical, to that which you present. For instance, in 1997, the City of Oswego asked this office whether two members of the Oswego City Council should participate in unspecified matters likely to affect the city's future relationship with their employer, Niagara Mohawk Power Corporation. Op. Atty. Gen. (Inf.) No. 97-5. Specifically, the City of Oswego asked whether "it is proper for the two members of the city council employed by Niagara Mohawk to vote on these matters." Id. We concluded that if the interests of a public official's employer are affected periodically "by matters before the council, recusal" — not outright resignation — "is the appropriate course of action." Id.
Likewise, in 1999, the Town of Clinton asked whether a member of its Board of Assessment Review was required to recuse himself from participating in board review of the assessment of his own property. Op. Atty. Gen. (Inf.) No. 99-42. We concluded that "the subject board member had an obligation to recuse himself" from any board action taken with respect to his property, because otherwise, the board's action would be tainted with the appearance of impropriety and vulnerable to legal challenge. Id. Our opinion did not suggest that the more extreme remedy of resignation was required.
Courts, too, have concluded that under circumstances somewhat analogous to those here, recusal is a sufficient remedy. In Matter of TuxedoConservation Taxpayers Assoc. v. Town Bd. of Town of Tuxedo,69 A.D.2d 320 (2nd Dep't 1979), for example, the Appellate Division held that an officer of an advertising firm who sat on the town board had voted improperly on a zoning application submitted by a subsidiary of one of his firm's clients. Id. at 323-24. The Second Department characterized his participation in the vote as an "egregious error," but the court nowhere intimated that he should have resigned his position on the town board. Id. at 324.
None of these cases, however, involved a situation, as here, where there was both (1) a substantial probability that a conflict would continue to recur in the future; and (2) a board member, at least by all outward appearances, who stood to profit directly (as opposed, for instance, to the employees in the Niagara Mohawk case) from the situation giving rise to the conflict.
Nevertheless, we conclude that in light of the infrequency of these potential conflicts, resignation is not required. If resignation and not recusal was the appropriate remedy in every instance where a local official's private endeavors raised a potential conflict of interest, it seems likely, as you suggest, that local units of government would have difficulty finding qualified individuals to serve the public interest. For this and the reasons explained above, it is our view that the Board member in question need not resign his position on the Board if his firm approximately once per year accepts projects over which the Board has jurisdiction. If, however, recusal becomes a "common occurrence," his resignation from the Board may be necessary. Op. Atty. Gen. (Inf.) No. 85-20.
The Attorney General renders formal opinions only to officers and departments of State Government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General
In Charge of Opinions
By:__________________________
ROBERT H. EASTON
Assistant Solicitor General